IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS,

RICHARD TODD ARNALL,

                    Plaintiff,

          Vs.                                        No. 14-4035-SAC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                    Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the defendant

Commissioner of Social Security ("Commissioner") that denied the claimant

Richard Todd Arnall's ("Arnall") Title II application for disability insurance

benefits and Title XVI application for supplemental security income under the

Social Security Act ("Act"). He filed his applications in February of 2011,

alleging a disability beginning March 30, 2009. After both applications were

denied initially and on reconsideration, Arnall requested an administrative

hearing. A video hearing was held on November 15, 2012. (Dk. 9-3, p. 52).

The administrative law judge ("ALJ") issued her decision finding that Arnall was

not under a disability from March 30, 2009, through the date of her decision,

December 20, 2012. (Dk. 9-3, p. 20). On February 27, 2014, the Appeals

Council denied the claimant's request for review. (Dk. 9-3, p. 6). Thus, the

ALJ's decision stands as the Commissioner's final decision. The administrative

record (Dk. 9, attachments) and the parties' briefs are on file pursuant to D.

Kan. Rule 83.7.1 (Dks. 13, 14 and 15), the case is ripe for review and decision.

Born in 1968, Arnall is a high-school graduate, and his last employment was drywall installation which he had been doing since 1993. Arnall testified that pain and fatigue forced him to quit this work. (Dk. 9-3, p. 59). He described a constant burning pain in his neck and shoulders with headaches upon increased physical activity. *Id*. at 60. He also testified to almost continuous pain in his lower back and hips. He described most of his mornings to include waking his teenage boys, helping them get ready for school, and attempting some housework when he is able. *Id*. Arnall also testified to pain in his legs, knees and hands with numbness in his hands with activity and numbness in his legs with driving. *Id*. He testified that the lower back pain is the worst as it radiates down his hips and legs. *Id.* at 70.

At the hearing, Arnall testified to receiving treatment from a nurse practitioner, Diana Marshall, at the Mercy Clinic in Columbus and to having "a little bit of medical insurance through the tribe" which entitles him to limited prescriptions. *Id*. at 61. Because "his tribal insurance switched to Freeman Hospital," Arnall said his office visits with Marshall were no longer covered, and he had not seen her for three months. *Id*. Arnall described the side effect of drowsiness from his medication as something that "can get really bad" after a poor night of sleep. *Id*. at 62. Arnall also explained that his surgeon had advised him against fusing C3 through C6 in favor of fusing C5 and C6 first. *Id*. When the surgery on C5 and C6 did not provide him all the relief he expected,

Arnall was afraid of fusing the remaining discs due to the risk of being unable to turn his head. *Id.* at 62-63.

Arnall testified to limited daily living activities around the house and to frequently resting and elevating his feet. *Id.* 64-65. He said he can stand or sit for 15 to 20 minutes before needing to change positions. *Id.* at 65. He believed his lifting limit was 10 pounds. *Id.* at 66. He is no longer able to hunt, and he says his activities are confined to helping his wife and sons, as he is able. When questioned about handling a desk job, Arnall answered that he needs to lie down several times a day and elevate his feet. *Id.* at 68.

On appeal, Arnall argues the ALJ erred in giving significant weight to the medical opinions of Dr. Arjunan and Dr. Weingarten who merely reviewed medical records and in giving "little weight" to the opinion of Diana Marshall, a registered physician's assistant, because she "is not an acceptable medical source" and "no objective evidence of record . . . support[ed] her finding that the claimant must recline and elevate his feet several times a day." (Dk. 9-3, p. 18). Second, the plaintiff contends the ALJ failed to consider the evidence properly in making credibility findings. Finally, Arnall contends the ALJ's assessment of residual functional capacity ("RFC") is in error for not accepting his testimony on needing to elevate his feet due to pain.

**STANDARD OF REVIEW**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that the Commissioner's finding "as to any fact, if supported by

substantial evidence, shall be conclusive." The court also reviews "whether the correct legal standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Persales*, 402 U.S. 389, 401 (1971) (quotation and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). The review for substantial evidence "must be based upon the record taken as a whole" while keeping in mind "evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks and citations omitted). In its review of "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, . . . [the court] will not reweigh the evidence or substitute . . . [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citation omitted).

The court's duty to assess whether substantial evidence exists: "is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence--particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.'" *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985)). At the same time, the court "may not displace the agency's choice between two fairly

conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d at 1084 (internal quotation marks and citation omitted). The court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been made." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted).

By statute, a disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

A five-step sequential process is used in evaluating a claim of disability. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The first step entails determining whether the "claimant is presently engaged in substantial gainful activity." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted). The second step requires the claimant to show he suffers from a "severe impairment," that is, any "impairment or combination of

impairments which limits [the claimant's] physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (internal quotation marks and regulatory citations omitted). At step three, the claimant is to show his impairment is equivalent in severity to a listed impairment. *Lax*, 489 F.3d at 1084. "If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show that the impairment or combination of impairments prevents him from performing his past work." *Id*. Should the claimant meet his burden at step four, the Commissioner then assumes the burden at step five of showing "that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy" considering the claimant's age, education, and work experience. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (internal quotation marks and citation omitted). Substantial evidence must support the Commissioner's showing at step five. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

**ALJ'S DECISION**

　　　　At step one, the ALJ found Arnall to have not engaged in substantial gainful activity since March 30, 2009. At step two, the ALJ found Arnall to have the following severe impairments:   "carpal tunnel syndrome, status-post release on the right, degenerative disc disease of the cervical and lumbar spine, status-post cervical fusion, degenerative joint disease of the

6

right shoulder, and tendonitis of the shoulders." (Dk. 9-3, p. 13). At step three, the ALJ found that Arnall's impairments, individually or in combination, did not equal the severity of the listed impairments. *Id.* at 14.

Before moving to step four, the ALJ determined that Arnall had the residual functional capacity ("RFC") to perform:

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can sit for six hours in an eight hour day with a sit/stand option, stand and walk short distances for up to two hours in an eight hour day, cannot work overhead with the bilateral upper extremities, lift up to 10 pounds occasionally, can reach with the bilateral upper extremities occasionally, can perform manipulative activities with the right dominant upper extremity occasionally but not repetitively, including handling, feeling, gripping and fine manipulation, can perform limited stooping, can perform other postural activities occasionally, and cannot push or pull with the bilateral upper extremities.

(Dk. 9-3, p. 15). At step four, the ALJ found that Arnall was unable to perform his past relevant work as a drywall installer. *Id.* at p. 19. "Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant number in the national economy that the claimant can perform." Specifically, relying on the vocational expert's testimony, the ALJ found that Arnall could successfully adjust to other work, namely a security guard and a call out operator.

**CREDIBILITY FINDINGS**

Arnall argues the ALJ did not consider the evidence properly as to the different factors used in evaluating his credibility. It is the court's task to determine "whether the factual findings are supported by substantial evidence

and whether the correct legal standards were applied." *Mays v. Colvin,* 739 F.3d 569, 571 (10th Cir. 2014). The court looks at "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but . . . [i]t will not reweigh the evidence or substitute . . . [its] judgment for the Commissioner's." *Lax,* 489 F.3d at 1084.

Because the credibility findings "help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined." *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009). "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks omitted). An ALJ's adverse credibility finding, however, "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks omitted).

In determining the credibility of a claimant's pain statements, the ALJ should weigh these factors:

> 1.[t]he individual's daily activities; 2.[t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. [f]actors that precipitate and aggravate the symptoms; 4.[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5.[t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6.[a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7.[a]ny other factors concerning the individual's functional

limitations and restrictions due to pain or other symptoms.
*Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004) (citing Soc. Sec.
Rul. 96–7p, 1996 WL 374186 at *3. *See also Huston v. Bowen*, 838 F.2d 1125,
1132 (10th Cir. 1988) ("listing other factors including 'frequency of medical
contacts, … subjective measures of credibility that are particularly within the
judgment of the ALJ, the motivation of and relationship between the claimant
and other witnesses, and the consistency or compatibility of nonmedical
testimony with objective medical evidence')." While the ALJ "need not make a
formalistic factor-by-factor recitation of the evidence" when making her
credibility assessment, *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th
Cir. 2012) (internal quotation marks omitted), she should "discuss the
significantly probative evidence supporting claimant's allegations upon which
[s]he chose not to rely," *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir.
2004). The court in *Hardman* found the ALJ had erred in failing "to expressly
consider claimant's persistent attempts to find relief from his pain, his
willingness to try various treatments for his pain, and his frequent contact with
physicians concerning his pain-related complaints." 362 F.3d at 680. By the
same token, the Tenth Circuit has said that judicial review involves the
"exercise [of] common sense," must not "insist on technical perfection," and is
easier when the ALJ's explanation is "more comprehensive." *Keyes–Zachar*y,
695 F.3d at 1166. If "we can follow the adjudicator's reasoning in conducting

9

our review, and can determine that correct legal standards have been applied,

merely technical omissions in the ALJ's reasoning do not dictate reversal." *Id.*

The ALJ summarized Arnall's testimony regarding his pain and

limitations:

> The claimant alleges that carpal tunnel syndrome, cubital tunnel syndrome, arthritis and bursitis in the shoulders, numbness in his arms and legs, and leg and back pain limit his ability to work. He reports that he cannot walk even a block, and has problems lifting, squatting, bending, standing, reaching, sitting for prolonged periods and kneeling (Exs. 2E; 4E; 11E). At the hearing, the claimant testified that he suffers side effects from medication, including dizziness, and that he cannot lift more than 10 pounds. After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Dk. 9-3, p. 15). The ALJ next reviewed the medical records obtaining a history

of the plaintiff's medical treatment. Regarding the plaintiff's shoulder and neck

pain, the ALJ noted the complaints and treatments prior to surgery in March

2010 and his improved condition following it. The ALJ observed:

> By May, he said his neck was doing extremely well and he was throwing a baseball with his kids. In September, the radiculopathy had resolved, he had 5/5 strength in the upper extremities and he was neurologically intact. In March 2011, he reported some neck pain and hand numbness, but x-rays showed a stable cervical spine, with nicely incorporating interbody graft. Given his improvement, and limited objective signs on exam, he was released from care with a note that he be seen only on an as needed basis, suggesting that his neck condition is not as severe as alleged. (Exs. 6F:6-7; 11F:1-4, 7).

(Dk. 9-3, p. 17). The ALJ also discussed the medical records on the plaintiff's

complaints of low back pain, the MRI results, and plaintiff's activities discussed

in those records.  The ALJ next observed:

> The most recent treatment notes document ongoing pain complaints. In March 2012, the claimant had tenderness and limited range of motion in the shoulders, normal range of motion but tenderness in the elbows, tenderness in the knees, and normal cervical range of motion. He was assessed with degenerative joint disease in the knees in April and presented with some limitation in lumbar range of motion in May 2012, for which only conservative care is indicated.

*Id.* The ALJ then discussed the medical source evidence and opinions before

making these specific credibility findings as to Arnall:

> Despite reports of disabling symptoms, the claimant engages in a breadth of daily activity. He alleges that he has problems dressing and bathing, but he told a consulting examiner that he has no limitation in those realms. (Exs. 16F; 4E). He also straightens up around the house, sits long enough to watch television, mows the lawn on a riding mower and vacuums (Exs. 16F; 4E). Since his surgeries, the claimant has been treated routinely and conservatively and despite his pain complaints, no further surgical intervention has been indicated, suggesting that he has had adequate response to treatment. Further, the claimant has engaged in activities such as wet-sanding a car and throwing a football, which demonstrate that his neck, arm, wrist and shoulder pain complaints may be overstated. Additionally, although he testified to side effects from medication, such complaints are not documented in the record.

(Dk. 9-3, pp. 18-19).

The above demonstrates that the ALJ did consider the factors

relevant for determining credibility and did not reject the plaintiff's complaints

simply for lacking objective medical evidence. The plaintiff has not

demonstrated a lack of substantial evidence for the ALJ's findings that he has

received primarily conservative treatment after his surgeries and that no

additional surgeries have been recommended or indicated. (Dk. 13, p. 32). Arnall points to his own statement about needing more nerve surgery which he made to the consulting examining psychologist, Dr. Mintz, sometime after his first surgery. (Dk. 9-13, p. 14). The plaintiff's personal statement or opinion does not undermine the ALJ's finding about what the medical records show regarding the need for more surgery. For that matter, Dr. Mintz's observation of pain does not contradict the ALJ's decision which certainly credited the claimant as experiencing pain. But as the Tenth Circuit has observed, "disability requires more than the mere inability to work without pain." *Wall v. Astrue*, 561 F.3d 1048, 1068 (10th Cir. 2009).

The plaintiff next alleges that his unemployment and limited health insurance, as well as his own concerns over surgical complications, explain the lack of more serious surgical treatment. The plaintiff contends the ALJ erred in not addressing the factors set out in *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987), when evaluating a claimant's lack of treatment. The plaintiff is unable to rely on *Frey* here. The Tenth Circuit has explained that the *Frey* requirements apply only when the claimant's failure to pursue treatment "is cited as a stand-alone basis for denying benefits under 20 C.F.R. §§ 404.1530 and 416.930, not when it is merely part of a credibility assessment." *Holbrook v. Colvin*, 521 Fed. Appx. 658, 663 n.5 (10th Cir. 2013)(citing *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). The plaintiff's cursory arguments over

12

the lack of insurance and financial ability are not well grounded. The record shows the plaintiff has received extensive medical treatment since he stopped working, he has tribal health insurance, and he has provided no evidence that he "sought to obtain [additional] low-cost medical treatment" or that he has "been denied medical care because of [his] financial condition." *Mayberry v. Astrue*, 461 Fed. Appx. 705, 711 (10th Cir. 2012) (quoting *Murphy v. Sullivan*, 953 F.2d 383, 386–87 (8th Cir. 1992) and citing *Threet v. Barnhart*, 353 F.3d 1185, 1191 n. 7 (10th Cir. 2003) ("indicating 'that inability to pay may provide a justification for [the] claimant's failure to seek treatment' when there is evidence that the claimant sought and was refused treatment")). The claimant's own attorney asked about health insurance and elicited the testimony about "a little bit of medical insurance" from the tribe and about his office visits being covered by the tribal insurance. (Dk. 9-3, p. 61). On the subject of additional surgery, the plaintiff testified only about his concerns over complications and did not mention anything about insurance. *Id.* at 62-63. The court does not find an error in the ALJ's evaluation of this evidence. Substantial evidence sustains the ALJ's credibility finding.

        The plaintiff next disputes the evidence supporting the ALJ's finding that Dr. Smith, who did the cervical spine surgery, "released him to be seen only on an as needed basis" because his condition was not "as severe as alleged." (Dk. 9-3, p. 17). Dr. Smith's medical records on the post-operative

office visits show the following. At six weeks, Arnall "is doing extremely well,"
"[h]is upper extremity pain has pretty much resolved," and "[h]e is able to
throw the baseball with his kids now and is quite satisfied." (Dk. 9-9, p. 24).
One month later, he is still "doing extremely well" with no neck or arm pain and
he had "5/5 muscle strength in bilateral upper extremities," but his biggest
complaint is now back and leg pain. (Dk. 9-9, p. 23). Physical therapy for his
back was tried, and it had "aggravated his back." *Id.* An MRI was ordered for
his back. Six months after the operation, on September 8, 2010, Arnall "is
doing well," but "continues to have some neck pain." (Dk. 9-9, p. 22). This
record also states, "he has tried to go back to work but having difficulty
because he says that he aggravates his neck anytime he does heavy lifting and
has not been able to get back to work full time." *Id.* Dr. Smith recorded for the
plan that Arnall was to "continue to get back to work and increase his activity
level" and he would be seen "as needed." *Id.* One year after the surgery, Dr.
Smith wrote that "symptoms have gotten somewhat better since the last office
visit," that he no longer has headaches, but that he has shoulder and arm pain
and some numbness in his hands. (Dk. 9-9, p. 20). "Motor testing of the upper
extremities [was] . . . normal," the fused discs were "stable," counseling on
treatment plan and recommendations was given but no details are found in the
record, and no follow-up appointment was scheduled as the plaintiff would
return on an "as needed basis." (Dk. 9-9, p. 20). The court is satisfied that Dr.

14

Smith's post-operative records support the ALJ's finding that the plaintiff's "neck condition is not as severe as alleged." (Dk. 9-3, p. 17). The plaintiff had testified at the hearing that he has continuous pain in neck and shoulders and experiences a headache upon doing "any kind of work." (Dk. 9-3, p. 60).

Arnall next argues the record does not support the ALJ's finding that he "engages in a breadth of daily activities." (Dk. 9-3, p. 18). The ALJ's decision describes these activities to include that Arnall dresses and bathes himself, "straightens up around the house, sits long enough to watch television, drives his sons to school every day, prepares simple meals, takes out the trash, mows lawn on a riding mower and vacuums. (Exs. 16F; 4E)." (Dk. 9-3, p. 18). The cited exhibits demonstrate that the plaintiff does these daily activities, and the court finds no error in the ALJ using the word "breadth" to describe these listed activities. The ALJ has appropriately determined that Arnall's credibility can be questioned because of the inconsistencies between his actual activities and his general claim of debilitating pain. *See Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013)(claimant's allegations of debilitating fatigue and widespread pain inconsistent with daily activities).

Part of the ALJ's credibility finding was that while Arnall "testified to side effects from medication, such complaints are not documented in the record." (Dk. 9-3, p. 19). Arnall testified that at the hearing that, "The drowsiness, it gets – depending on how the sleep goes at night, it can get really

15

bad because I don't sleep much at night." (Dk. 9-3, p. 62). He also testified that the prescribed sleeping pills cause him nausea. *Id.* The Commissioner points out those side effects from medication are not included in the reports of the examining psychologist and examining physician as one of the plaintiff's complaints. (Dks. 9-13, pp. 505-507; 9-14, pp. 553-556).

The plaintiff argues the ALJ's finding is "clear error" as such "complaints are well documented in the record." (Dk. 13, p. 38). The plaintiff cites a medical record from December of 2010 which notes that Arnall had complained of dizziness and that a doctor had warned Arnall about a prescription to be taken in the evening which "may cause drowsiness," (Dk. 9-9, p. 6-7). The plaintiff also cites from an office visit record in December of 2009 a reference to Arnall generally complaining of medication side effects. (Dk. 9-8, p. 47). The plaintiff's cited records, however, do not contradict the ALJ's finding that the medical records fail to document that the plaintiff complained of medication side effects like those to which he testified—"really bad" drowsiness. Based on what the plaintiff has argued and presented, the court does not find error in the ALJ's credibility finding.

Finally, Arnall takes issue with the ALJ's credibility finding that, "the claimant has engaged in activities such as wet-sanding a car and throwing a football, which demonstrate that his neck, arm, wrist and shoulder pain complaints may be overstated." (Dk. 9-3, p. 19). Arnall cites his testimony

16

that, "what had happened on that was I had took a shoulder injection and my shoulder actually felt better than it had ever felt. So I went home and me and him tossed the football for about 5 or 10 minutes and needless to say, that was the wrong thing to do because I was right back in the same situation." (Dk. 9-3, p. 63). On the wet-sanding event, he testified that he helped a friend who "was just wanting to know the ins and outs of wet sanding and I did wet sand some on a fender to show him the dirt spots and different things that needed to come out, and showed him how to buff and it was matter of probably 15 minutes of showing him." *Id.* The plaintiff does not dispute that he engaged in these activities but challenges the ALJ's reliance on such sporadic activities to discredit his pain complaints.

The Tenth Circuit has recognized that the "sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity." *Krauser v. Astrue*, 638 F.3d 1324, 1333 (10th Cir. 2011)(internal quotation marks and citation omitted). This is not a case in which the ALJ used such activities to determine that the claimant was capable of performing medium exertional level work. *Id.* Rather, the ALJ afforded "the claimant the benefit of the doubt with respect to his subjective complaints" for most functional limitations." (Dk. 9-3, p. 18). Instead, the ALJ cited this testimony to dispute complaints of a disabling pain that foreclosed Arnall from performing even sedentary work with additional limitations. That

17

the plaintiff regarded himself as capable of these activities and then did them is not consistent with his testimony of headaches and pain that come with "any kind of work." (Dk. 9-3, p. 60). The ALJ certainly has a reasonable basis in the record for saying that engaging in such activities show the plaintiff "may be overstat[ing]" his pain complaints. (Dk. 9-2, p. 19). The court is satisfied that substantial evidence sustains the ALJ's credibility findings.

**ERROR IN EVALUATING MEDICAL OPINIONS**

The plaintiff argues the ALJ erred in giving "significant weight" to the medical opinions of Dr. Arjunan and Dr. Weingarten who merely reviewed medical records and in giving "little weight" to the opinion of Diana Marshall, a registered physician's assistant. With respect to Dr. Arjunan, the plaintiff also faults the ALJ's heavy reliance on this medical opinion, because more medical evidence came in after Dr. Arjunan 's opinion in September of 2011. The ALJ gave little weight to the opinion of Ms. Marshall because she "is not an acceptable medical source and there is no objective evidence of record to support her finding that the claimant must recline and elevate his feet several times a day." (Dk. 9-3, p. 18). The plaintiff's only challenge is that "there is an objective basis for Plaintiff to recline and put his feet up due to pain." (Dk. 13, p. 28). He cites a 2010 MRI report showing a disc bulge with degenerative disc disease and engagement of nerve roots and a physical examination report that showed loss of lordatic curve and hamstring tightness. He also cites his own

18

testimony about the need to recline and elevate his feet in order to relieve pain.

The ALJ's duties include evaluating all medical opinions in the record, assigning weight to each opinion, and discussing the weight given to each. *See* 20 C.F.R. §§ 416.927(c), 416.927(e)(2)(ii); *Keyes-Zachary v. Astrue*, 695 F.3d at 1161. "Medical opinions are statements from . . . medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). It is true that a "treating physician's opinion is given particular weight because of his unique perspective to the medical evidence." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003). The plaintiff does not argue error from the failure to give proper weight to a medical opinion from a treating physician. While Ms. Marshall is not an "acceptable medical source," the ALJ is still required to explain the weight given to opinions from other sources:

> "[T]he adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."

*Keyes-Zachary v. Astrue*, 695 F.3d at 1163 (quoting SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). "In the case of a nonacceptable medical source

. . . , the ALJ's decision is sufficient if it permits us to 'follow the adjudicator's reasoning.'" *Id.* at 1164 (quoting SSR 06–03p, 2006 WL 2329939, at *6).

The ALJ's decision includes sufficiently specific, clear and good reasons for the weight given the respective medical opinions. It too complies with SSR 06-03p by explaining the weight assigned Ms. Marshall's opinion and the reasons for that weight. SSR 06-03p recognizes that information from "other sources, . . . may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." 2006 WL 2329939, at *2. The court does not appreciate how Ms. Marshall's opinion that the claimant needs to lie down and elevate his feet qualifies as special knowledge providing insight into the severity of his impairment. Moreover, the ALJ may properly discount an opinion when it is given without objective reasons or evidence of record to support it. The court finds that the plaintiff has not come forward with evidence showing the ALJ's reasons for weighing Ms. Marshall's opinion to be in error or without substantial evidence behind them.

**RFC FINDING**

The plaintiff's final contention is that the ALJ erred in not including in the RFC and in the hypothetical question to the vocational expert any limitation based on his need to elevate his feet because of pain. The ALJ did not include this limitation having found the plaintiff's pain testimony not to be

20

credible to this extent and having found Ms. Marshall's opinion entitled to "little weight." Because the court has found substantial evidence to sustain the ALJ's findings in both respects, the court rejects the plaintiff's argument for error with the RFC finding and hypothetical question.

Finding no error in the ALJ's use of the proper legal standards and finding sufficient evidence from which a reasonable mind might accept as adequate to support the ALJ's determination of Arnall's RFC and the conclusion that he is not disabled, the court affirms the judgment of the Commissioner.

IT IS THEREFORE ORDERED that the judgment be entered in accordance with sentence four of 42 U.S.C. § 405(g) affirming the Commissioner's decision.

Dated this 23rd day of June, 2015, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge